## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

**ROY L. PERRY-BEY, et al.,**

        **Plaintiffs,**

**v.**

**Civil Action No. 219cv344-RAJ-DEM**
**JURY TRIAL REQUESTED,**

**UNITED STATES DEPARTMENT OF DEFENSE; MARK T. ESPER, in his official capacity as Secretary of Defense; ROBERT WILKIE; in his official capacity as Secretary of the Veterans Affairs, BARBARA BARRETT; in her official capacity as Secretary of the Air Force, *et al.***

        **Defendants.**

### <u>PLAINTIFF MARY ELLEN HILLS' THIRD AMENDED COMPLAINT</u>

1. In the case of Plaintiff Roy L. Perry-Bey, et al., COMES NOW, Mary Ellen Hill to file this additional document to seek

compensatory, declaratory and injunctive relief pursuant to 5 U.S.C. §§ 704-706, against United States Department of Defense; Mark T. Esper, in his official capacity as Secretary of Defense; Robert Wilkie, in his official capacity as Secretary of the Veterans Affairs; Ryan D. McCarthy, Barbara Barrett, in her official capacity as Secretary of the Air Force; because they are violating federal statutes and regulations that require them to publish or make decisions available to the public or to grant or deny claims for service connected injury or disease and give liberal or special consideration regarding upgrade of discharges made by Defendants' Discharge Review Boards (DRBs) and Boards for Correction of Military Records (BCMRs) (collectively, "the Boards"). See Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir., 2003).

2. Each of the Defendants oversees DRBs and BCMRs.

3. Defendants have a mandatory statutory and regulatory requirement to ensure that decisions of the United States Department of Defense (DoD) acting through the Veterans Affairs, ARBA, BCMR, DRB, ABCMR AFBDRB, AFBCMR, or NDRBs, is clear and unmistakable or comply with law. As part of these mandatory statutory and regulatory requirements, Defendants must ensure that an agency take discrete action that it is required to take and all decisions of the Veterans Affairs, (DRBs) and the Boards for Correction of Military Records (BCMRs), comply with the Hagal and Carson or Kurta Memo's application in all cases. APA. 5 U.S.C. § 706(1). Ex: T

4. Defendants have a mandatory statutory and regulatory requirement to ensure that decisions of the Boards are made available to the public. As part of these mandatory statutory and regulatory requirements, Defendants must ensure that all decisions of the Boards are available to the public and that decisions are indexed to allow the public to find relevant cases. 10 U.S.C. § 1552, 32 C.F.R. § 70.8.

5. Before April 2019, Defendants violated their legal requirements by failing to publish all of the decisions made by the boards and failing adequately to index the decisions they did publish. 10 U.S.C. § 1552(a)(5).

6. Since April 2019, Defendants have violated their legal requirement by preventing the public from inspecting all previously published decisions of the Boards. Virtually all decisions by the boards are now unavailable to the public.

## JURISDICTION

7. This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1331 (federal questions for violating a federal statute); 28 U.S.C. § 1346 (United States as a defendant); and 28

U.S.C. § 1361 (action to compel an officer of the United States to perform his duty). This Court

has remedial authority under 28 U.S.C. § 2201, and this Court may grant compensatory

relief, declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202, 5

U.S.C. §§704-706, the U.S. Constitution and laws, or treaties of the United States. This Court

also has original jurisdiction based on diversity of citizenship of all the parties and the amount in

compensatory relief for an injury suffered exceeds the sum or value of $750,000,000, exclusive

of interests and cost, and is an action in which a member of the plaintiffs(at $37,500,000 per

Plaintiff) is a citizen of a state different from the defendants.

8. The Department of Veterans Affairs categorically denied claims for service connected injury

or disease, or otherwise not in accordance with law, constitutes final and binding agency action

on all field offices of the Department of Veterans Affairs on behalf of the United States under 38

U.S.C. § 3.104, Plaintiff has suffered legal wrong due to Defendants' actions and is adversely

affected or aggrieved by Defendants' actions within the meaning of 38 U.S.C. § 3.104.

9. The removal of and continued failure to make available to the public Boards' past decisions

and an adequate index of these past decisions constitutes final agency action under the APA. 5

U.S.C. §§ 704, 706.  Plaintiff has suffered legal wrong due to Defendants' actions and is

adversely affected by Defendants' actions, but are not limited to within the meaning of APA. 5

U.S.C. § 702.

---

1.TAKE JUDICIAL NOTICE: In 1804 in Little v. Barreme, an award of damages in an action against a U.S. naval officer for
interdicting a vessel coming from a French port (when the statute only authorized seizure of vessels going to such ports) was
upheld, on the theory that the officer had no defense to damages if his actions were in violation of the law, even if they were
pursuant to a presidential order.

10. Venue lies in this district pursuant to 28 U.S.C. § 1391(e) both because the defendants reside within this district and because a substantial part of the events or omissions occurred in the district.

## PARTIES

11. Mary Ellen Hill was a Virginia resident and veteran of the U.S. Air Force.

12. Defendant United States Department of Defense (DoD) is an executive branch agency of the U.S. federal government that is responsible for coordinating and supervising the United States Armed Forces and military services' DRBs and BCMRs.

13. Defendant Mark T. Esper is Secretary of Defense and is sued in his official capacity. As Secretary of Defense, Dr. Esper is responsible for coordinating and supervising the United States Armed Forces and the military services' DRBs and BCMRs.

14. Defendant Robert V. Wilkie, Secretary Department of Veterans Affairs, is sued in his official capacity. Congress has authorized the Secretary [of Veterans Affairs] to decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to review under 38 U.S.C. § 502.

15. Defendant Barbara Barrett, Secretary of the Air Force, is sued in her official capacity. Congress has authorized the Secretary of the Air force, acting through a civil board, to "correct a military record" when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); 32 C.F.R. Part 723, (Air Force Board for Correction of Military Records ("AFBCMR"); 32 CFR 865.0.

16. The gravamen of this case is the United States Department of Defense through the Veterans

Affairs arbitrarily, capriciously or categorically denied claims for service connected injury or

disease, or otherwise not in accordance with law, or in violation of the Administrative Procedure

Act, 5 U.S.C. § 706, 28 U.S.C. § 1110, 38 U.S.C. § 3.105(a), 38 U.S.C. § 5103(a), 38 CFR

3.310, 10 U.S.C. § 1201 or Chapter 4.19(3)(b), AR 600-8-4, the First and Fifth Amendment due

process to the   U. S. Constitution, including, but are not limited to the Hagel, Carson or Kurta

Memo.

## FACTUAL BASIS FOR PLAINTIFFS' CLAIMS

17. Plaintiff, was a veteran of the Air Force during the period between January 24, 1979 to

February 7, 1979. At just eighteen years old, during Basic Training at Lackland, AFB in San

Antonio, Texas. Hill was informed she was "damaged goods" and Honorable Discharged.

Hill was in the barracks and had complained to the Drill Sergeant she was

having pain in her back and it was excruciating the Drill Sergeant started yelling

and spitting in her face. He began screaming and accused Hill that she was

trying to get out of duty. She was not. Hill went to medical at Lackland and

they ran test. Medical prescribed pain pills and Hill was placed on restricted

duty and sent back to her barracks. While Hill was in the barracks alone, Hill

was sexually assaulted "raped" or abused by the unit Drill Sergeant.

After the MST, Hill was afraid to tell anyone. She did not think anyone

would believe her as an African American Female, especially since it was the

Drill Sergeant who sexually assaulted her and he was a White Male. He was

the one who had already accused Plaintiff of lying about her back.

Hill was sent back to medical because she was not getting better, since She could not participate in the physical training. Hill was asked about her back and if she had problems before the military. Hill never had any prior back pain to the point of chronic pain when Hill entered service or to the point that She was experiencing in basic training. Hill was told it was a condition that existed prior to service. That is not true. Hill was given a full entry examination. Plaintiff military sexual trauma "MST", back injury, headaches, depression, stress and anxiety were incurred or aggravated during her military service. The military officials gave Hill no options. Wilford Hall Medical Center Officials informed Hill they were discharging her because She had a previous medical condition with her back. Then the Drill Sergeant told Hill was being discharged because She was "damaged goods."

Hill was severely traumatized. She was given no resources. Hill was 18 years old, did not and could not tell her parents what happened. Ms. Hill has been very depressed and had suicidal inclinations. To this day, Hill struggles with relationships. Hill struggled with unsuccessfully becoming a Mother. Hill relives this traumatized incident every day. Hill is 60 years old and this affects Hill every day. No one helped Plaintiff, military officials just sent Hill home. Hill has never been married because She struggles with PTSD, depression, anxiety and relationships as a result of this MST. Plaintiff was denied on December 18, 2012, Hill service-connected disability compensation for injury and PTSD claim, for mental health conditions incurred or aggravated during her military service as a result of back injury and MST, on June 25, 2019.

## REGULATORY BACKGROUND

18. Administrative Procedure Act, 5 U.S.C. § 706(1)(2), The United States Department of Defense authorized the Secretary of Veterans Affairs through a scheme or course of conduct that included approval of the Secretary's [Air Force] branch of the military, in violation of its mandate, by reason of arbitrary or capricious blanket decisions or erroneous denial of claims by the Department of Veterans Affairs (the "VA") and the Discharge Review Boards ("DRBs") of each branch of the armed services as her are final agency actions, violates 38 U.S.C. § 3.104. 38 U.S.C. § 3.105(a) Secretary of Veterans Affairs through a scheme or course of conduct that included approval of the Secretary's of each branch of the military, in violation of its mandate, acting on behalf of the United States Department of Defense, it's erroneous or arbitrary previous determinations are final and binding, including decisions of service connection, degree of disability, accepted as correct contrary to clear and unmistakable error. Where evidence as here establishes such error, its prior decisions wasn't reversed or amended as required, violated the individual Plaintiff's rights under 38 U.S.C. § 3.105(a).

19. 38 U.S.C. § 5103(a), Secretary of Veterans Affairs through a scheme or course of conduct that included approval of Secretary's [Air Force] branch of the military, acting on behalf of the United States Department of Defense (DoD), violated its mandated duty by not notifying the individual Plaintiff(Hill) of any information and medical evidence or lay evidence needed to substantiate their claim and allowed under law and regulation, violated Hills' right under 38 U.S.C. § 5103(a).

20. 38 C.F.R. § 3.310(a), Secretary of Veterans Affairs through a scheme or course of conduct that included approval of the Secretary's [Air Force] branch of the military, in violation of its mandate, acting on behalf of the United States Department of Defense, by arbitrary blanket

denial of Hills' disability claim which is proximately due to or the result of a

service-connected disease or injury that shall be service connected. When the individual

plaintiff's service connection such as we have here is thus established for a secondary condition,

and the secondary condition shall be considered a part of the original condition erroneously

denied, violated their rights under 38 C.F.R. § 3.310(a).

21. 38 C.F.R. § 3.310(a), Secretary of Veterans Affairs through a scheme or course of conduct

that included approval of the Secretary's Air Force branch of the military, in violation of

its mandate, acting on behalf of the United States Department of Defense, wrongful denial of

Hills' disability claims which is proximately due to or the result of a service-connected disease

or injury, is clearly service connected. When Plaintiff's service connection as here is thus

established for a secondary condition denied, the secondary condition shall be considered a part

of the original condition, violates 38 C.F.R. § 3.310(a).

22. 38 C.F.R. § 3.310(b), Secretary of Veterans Affairs through a scheme or course of conduct

that included approval of the Secretary's Air Force branch of the military, in violation of its

mandate, acting on behalf of the United States Department of Defense (DoD), blanket denial that

any increase in the individual Plaintiff's severity of aggravation of non-service-connected

disease or injury that is proximately due to or the result of a service-connected disease or injury,

and not due to the natural progress of the non-service-connected disease, that it shall be

considered service connected erroneously denied, violated their rights under 38 C.F.R. §

3.310(b).

23. 38 U.S.C. § 1110, Secretary of Veterans Affairs through a scheme or course of conduct

included the approval of the Secretary's Air Force branch of the military, in violation of its

mandate, acting on behalf of the United States Department of Defense, denial that the individual

Plaintiff's disability resulting from personal injury suffered or disease contracted in line of duty,

or for aggravation of preexisting injury suffered or disease contracted in line of duty, in the

active military, naval, or air service, during a period of war, the United States will pay to any

veteran thus disabled and who was discharged or released under conditions other than

dishonorable from the period of service in which said injury or disease was incurred, or

preexisting injury or disease was aggravated, as here compensation was denied as provided in

this sub-chapter, violated the individual Plaintiff's(Hills') rights under 38 U.S.C. § 1110.

24. For example, 38 C.F.R. § 3.310, the Secretary of Veterans Affairs through a scheme or

course of conduct that included the approval of the Secretary's Air Force branch of the military,

in violation of its mandate, acting on behalf of the United States Department of Defense (DoD),

by arbitrary or capricious blanket denial of [Hills'(Plaintiff's)] application for service connected

or aggravation of non-service-connected disease or injury due to or the result of a service-

connected disease or injury, and not due to the natural progress of the non-service-connected

disease violated Wendell's rights under 38 C.F.R. § 3.310.

25. 38 U.S.C. § 1110, the Secretary of the Veterans Affairs through a scheme or course of

conduct that included the approval of the Secretary's Air Force branch of the military, in

violation of its mandate, acting on behalf of the United States Department of Defense, arbitrary

or capricious denial regarding [Hills'] application for aggravation of preexisting injury, disease

or pain alone as a functional impairment or disability, no matter the underlying cause violates 38

U.S.C. § 1110 mandate. See Chapter 4.19(3)(b), AR600-8-4.

26. 38 U.S.C. § 7107(a), the Secretary of the Veterans Affairs through a scheme or course of

conduct that included the approval of the Secretary's Air Force branch of the military, in

violation of its mandate, acting on behalf of the United States Department of Defense, by failing

to take discrete action or taking nearly three years to certify the individual plaintiff's case and transfer or review appeals or the appellate record in docket order to the Boards is unreasonable and deprives the individual Plaintiff(Hills') of Hills' constitutional right to procedural due process, violated their rights under 38 U.S.C. § 7107(a), See 38 C.F.R. § 19.35.

27. The Secretary of the Veterans Affairs through a scheme or course of conduct that included the approval of the Secretary's Air Force branch of the military, in violation of its mandate, acting on behalf of the United States Department of Defense (DoD), failed to take discrete action or to give procedural notice and liberal or special consideration regarding the individual Plaintiff's(Hills') application to upgrade their discharge based on their claim of recognized and/or previously unrecognized (PTSD) Post-Traumatic Stress Disorder or PTSD-related conditions that impacted their discharge and/or characterization of service and when the VA denied that PTSD, or PTSD-related conditions were not chronic and/or connected to their military ervice, violated the law and Hagel mandate.

28. The Secretary of the Veterans Affairs through a scheme or course of conduct that included the approval of the Secretary's Air Force branch of the military's lack of uniformity in violation of its mandate, acting on behalf of the United States Department of Defense, denying the individual plaintiff's claims or application to upgrade discharges based on the Hills' claims of recognized or previously unrecognized Post-Traumatic Stress Disorder PTSD, or PTSD-related conditions that impacted their discharge and/or characterization of service and when the VA denied that PTSD, or PTSD-related conditions were connected to military service, violates the Kurta mandate.

29. Upon discharge from the U.S. Armed Forces, military personnel receive a certificate that characterizes their service as Honorable, General (Under Honorable Conditions), Other than

Honorable, Bad Conduct, or Dishonorable.  32 C.F.R. §§ 724.109, 724.111.

30. The discharge characterization affects each veteran's eligibility for benefits and support services administered by the U.S. Department of Veterans Affairs (VA), see, e.g., 38 U.S.C. § 101(2); 38 C.F.R. § 3.12,  as well as benefits and services provided by state laws.

30. Yet, the United States Department of Defense (DoD), Air Force Discharge Review Boards, which adjudicates applications from the Air Force veterans seeking issues on disability and retirement or to upgrade or correct errors in their Honorable or less-than-Honorable discharges, rejects or ignore the petitions of nearly all who apply or withholds information from plaintiff's contesting it.

31. The Air Force or Air Force Board for Correction of Military Records (AFBCMR), does so without clearly explaining what a veteran must show to prevail and without applying the proper legal standards.

32. Plaintiff thus brings this purported action on behalf of Hills' self like all other similarly situated Air Force veterans who continue to be wrongfully denied entitled benefits, discharge upgrades, and corrections of their military records or disability which is proximately due to or the result of a service connected disease or injury arising out of activities in time of war or peace and a separate retaliation cause action against a veteran's advocate.    See 28 U. S. C. § 2680 (j).

## FACTUAL ALLEGATIONS

1.  Plaintiff (Hill) served her country with distinction from January 24, 1979 to February 7, 1979.

2.  Hill, at just eighteen years old, during Basic Training at Lackland, AFB in San Antonio, Texas. Ms. Hill was informed she was "damaged goods" and Honorable Discharged.

3.  Hill was in the barracks and had complained to the Drill Sergeant she was having pain in her back and it was excruciating the Drill Sergeant started yelling

11

and spitting in her face. He began screaming and accused Hill that she was
trying to get out of duty.  Hill was not.

4.  Hill went to medical at Lackland and they ran test. Medical prescribed pain pills and Ms. Hill
was placed on restricted duty and sent back to her barracks. While She was in the barracks alone,
Ms. Hill was sexually assaulted "raped" or abused by the unit Drill Sergeant.

5.  After the MST, Ms. Hill was afraid to tell anyone. Hill did not think anyone
would believe her as an African American Female, especially since it was the
Drill Sergeant who sexually assaulted her and he was a White Male. He was
the one who had already accused ill of lying about her back.

6.  Hill was sent back to medical because she was not getting better, since She
could not participate in the physical training. Hill was asked about her back and
if She had problems before the military. Hill never had any prior back pain to
the point of chronic pain when Hill entered service or to the point that She was
experiencing in basic training.  Hill was told it was a condition that existed
prior to service. That is not true. Hill was given a full entry examination.

7.  Hill military sexual trauma "MST", back injury, headaches, depression,
stress and anxiety was incurred or aggravated during her military service.
The military officials gave Hill no options. Wilford Hall Medical Center
Officials informed Ms. Hill they were discharging her because Hill had a
previous medical condition with her back. Then the Drill Sergeant told
Hill was being discharged because She was "damaged goods."

8.  Hill was severely traumatized. Hill was given no resources. Hill was 18
years old, did not and could not tell her parents what happened. Hill has
been very depressed and had suicidal inclinations.

9.  To this day Hill struggles with relationships. She relives this traumatized incident every day.

10.  Hill is 60 years old and this affects her every day. No one helped Hill, military officials just
sent
Plaintiff (Hill) home.

11. Hill has never been married because She struggles with PTSD, depression, anxiety and

relationships as a result of this MST. Hill was denied on December 18, 2012, her service-

connected disability compensation for injury and PTSD claim, for mental health conditions

incurred or aggravated during her military service as a result of back injury and MST, on June

25, 2019.

12.  Hill alleges that her processing records were altered.

13.  Hill alleges that the lack of law and order surrounding these factual allegations and response from the Secretary of the Veterans Affairs at the direction of the Secretary's Air Force branch of the military, acting on behalf of the United States denial of her 100%, is a dereliction of duty.

14. On September 3, 2014, then-Secretary of Defense Chuck Hagel directed all records-correction boards to give "special consideration" to PTSD diagnoses by the VA and "liberal consideration" to diagnoses of PTSD by civilian providers when adjudicating discharge upgrade applications submitted by veterans who have been diagnosed with PTSD. Memorandum from Chuck Hagel, Secretary of Defense (Sept. 3, 2014) ("Hagel Memo"). Ex. 1.

15. The Hagel Memo also directs military review boards to consider PTSD, and "PTSD-related conditions" as "potential mitigating factors in the misconduct that caused the under other than honorable conditions characterization of service." Id.

16. In 2016 Congress codified parts of the Hagel Memo. The Discharge Review Boards are now statutorily required to grant "liberal consideration" to the discharge upgrade applications of veterans with symptoms related to PTSD or traumatic brain injury (TBI). 10 U.S.C. § 1553(d)(3)(A)(ii).

16. In particular, the Discharge Review Boards are mandated to review each case "with liberal consideration to the former member that post-traumatic stress disorder or traumatic brain injury potentially contributed to the circumstances resulting in the discharge of a lesser characterization." Id.

17. On August 25, 2017, citing a determination "that clarifications are needed regarding mental health conditions," Acting Under Secretary of Defense for Personnel and Readiness Anthony M.

Kurta issued additional guidance clarifying that "[l]liberal consideration will be given to veterans petitioning for discharge relief when the application for relief is based in whole or in part on matters relating to mental health conditions."

18. Memorandum from A.M. Kurta, Acting Under Secretary of Defense for Personnel and Readiness (Aug. 25, 2017) ("Kurta Memo"). Ex. M

The AFBCMR must respond to all issues relevant to the decision whether to change the character of or reason for discharge. 32 C.F.R. § 70.8(d); United States Department of Defense (DoD) Instruction 1332.28, Discharge Review Board Procedures and Standards (April 4, 2004).

19. When the AFDRB, or AFBCMR makes a factual determination after considering contradictory evidence in the record, it must explain in its decision "why the information relied upon was more persuasive than the information that was rejected." Id.

20. The AFBCMR applies a "presumption of regularity in the conduct of governmental affairs," which can be overcome by "substantial credible evidence." Id. at § E3.2.12.6.

21. When the AFBCMR decides an application in part on the truth of a certain event or circumstance, it is required by United States Department of Defense (DoD) regulations to "make a finding of fact for each such event or circumstance." Id. at § E3.5.3.2.2.

22. While the AFBCMR may rely on the presumption of regularity in making this finding of fact, "the decisional document shall set forth the basis for relying on the presumption of regularity and explain the reasons the contradictory evidence was insufficient to overcome the presumption." Id. At § E3.5.3.2.2.2.

23. The AFBCMR may also correct military records. 10 U.S.C. § 1552. The statute does not require a veteran to apply to both boards prior to seeking judicial review, nor does it establish any sort of internal appeals process. Id.  Federal courts may review AFBCMR decisions as final

agency actions under the Administrative Procedure Act. 5 U.S.C. §§ 702, 706.

24. The Air Force and other administrative agencies are responsible for maintaining records for a variety of official purposes, including judicial review of agency action. 5 U.S.C. § 552a(e)(5); 44 U.S.C. §§ 3101, 3301.

25. The AFBCMR must also make all decisional documents available for inspection and review by the public. 32 C.F.R. § 724.810. Only names, addresses, social security numbers, and military service numbers may be redacted without written justification. 32 C.F.R. § 724.810(b).

26. These decisional documents must be indexed and in a usable and concise form "so as to enable the public, and those who represent applicants before the AFBCMR, to isolate from all these decisions that are indexed, those cases that may be similar to an applicant's case and that indicate the circumstances under or reasons for (or both) which the AFBCMR or the Secretary concerned granted or denied relief." 32 C.F.R. § 724.810(d).

## ALLEGATIONS AS TO THE PLAINTIFF GENERALLY

27. Approximately fifteen percent of all service members have left the military with Honorable or less-than-Honorable discharges. By contrast, only seven percent of Vietnam-Era veterans and less than two percent of World War II-Era veterans received less-than-Honorable discharges.

28. These hundreds of thousands of veterans with Honorable, or less-than-Honorable discharges are generally ineligible for numerous benefits that their service has otherwise earned them.

29. This includes compensation for service-connected disabilities, special unemployment compensation programs for veterans, a military burial, and benefits for surviving family members. Veterans with erroneous Honorable Chapter 5, AR 635-40or a less-than-Honorable discharges are categorically denied GI Bill education benefits and civil service retirement credits, and they are generally denied veterans' benefits provided by state and local governments.

15

30. Without these benefits, veterans are unable to access the health care they need, are forced to pay out of pocket for educational and vocational training opportunities, and are left largely without the support that is vital to ensuring a successful transition back into civilian life.

31. Furthermore, many employers reject applications from veterans with less-than Honorable discharges, even when those discharges are associated with only minor misconduct.

32. Employers regularly learn of an applicant's discharge status through a routine background check or by requesting that the veteran submit their discharge certificate (called a "DD-214," denoting Case the acronym on the form provided by the U.S. Department of Defense upon a military service member's discharge from the military) with their application.

33. A Honorable Chapter 5, AR 635-40 or less-than-Honorable discharge carries a stigma that casts doubt on a veteran's personal character and ability to perform as an employee.

34. A derogatory narrative reason for separation, which appears with the discharge status on a veteran's DD-214, can impose a similar or additional stigma on discharged veterans.

35. For example, many Honorable Chapter 5, AR 635-40 or less-than-Honorably discharged veterans receive a narrative reason for separation of "personal injury" "personality disorder" or "misconduct" without any additional explanation.

36. Many veterans with Honorable or less-than-Honorable discharges were discharged due to misconduct attributable to undiagnosed PTSD, TBI, personal injury or other related mental health conditions that they developed as a result of their military service or as a result of an experience of military sexual trauma (MST).

37. PTSD is a psychiatric disorder that can result from experiencing, witnessing, or confronting a traumatic event. Events that lead to PTSD    are frequently life-threatening. PTSD is the most prevalent mental disorder arising from military service or combat experience, and it is also

frequently developed after sexual assault. Its symptoms include flashbacks or nightmares relating to the traumatic event, avoidance of anything associated with the trauma, and hyper vigilance, which often manifests in difficulty concentrating and irritability.

38. According to the VA, 31 percent of Vietnam veterans have PTSD.

39. Researchers have found that, among these same service members with a diagnosis of PTSD were more likely to have a misconduct discharge compared to their peers who did not have a psychiatric diagnosis.

40. The Government Accountability Office estimates that from 2011 to 2015, more than 57,000 service members were separated from the military for misconduct despite a diagnosis of PTSD, TBI, or another mental health condition that could be associated with misconduct.

41. This amounts to over 62 percent of all service members separated for active duty injury or misconduct during the same period.

42. The Government Accountability Office, DOD Health: Actions Needed to Ensure Post-Traumatic Stress Disorder and Traumatic Brain Injury are Considered in Misconduct Separations, GAO 17-260 (May 2017) ("GAO Report").  Available at https://www.gao.gov/ assets/ 690/684608.pdf

43. The military frequently fails to comply with its own screening, training, and counseling policies related to PTSD and TBI. For example, out of 48 Marine Corps separation packets reviewed by the GAO, eighteen lacked documentation showing that the service member had been screened for PTSD and TBI.  GAO Report, at 24.  The Army or Navy lacks a PTSD screening policy consistent with Department of Defense requirements. Id. at 24.

44. Mental health issues and diagnoses carry pervasive societal stigma that often deters individuals from seeking the help they need. This stigma is no less acute within the military.

45. The Air Force have long shared a culture of downplaying the severity and pervasiveness of active duty injury or PTSD while stigmatizing those who seek compensation or treatment.

46. For example, in a 2014 speech to the Marines' Memorial Club, retired Marine Corps General James Mattis, now Secretary of Defense, stated his opinion that "[f]or those who have been through [combat] and the shock absorber wasn't sufficient, there's not too much we can do."

47. He further stated that "there is one misperception of our veterans and that is they are somehow damaged goods. I don't buy it . . . [w]hile victim hood in America is exalted, I don't think our veterans should join those ranks." General Mattis concluded that "[t]here is also something called post traumatic growth, where you come out of a situation like that and you actually feel kinder toward your fellow man and fellow woman."

48. However, compared to PTSD, which is widely studied and officially recognized in the Diagnostic and Statistical Manual of Mental Disorders (DSM), the concept of "post traumatic growth" is controversial.

49. A 2015 peer-reviewed study of more than 450 soldiers deployed to Iraq found that "[those] who reported more post traumatic growth had more post-traumatic stress later on . The findings are inconsistent with the general idea that perceived growth has positive implications for mental health after stressful events." Iris M. Engelhard et al., Changing for Better or Worse? Post traumatic Growth Reported by Soldiers Deployed to Iraq, 3 Clinical Psychol. Sci. 789, 794 (2015).  https:// www. ncbi.nlm.nih.gov/pmc/articles/PMC4168809/

50. Veterans with Honorable or less-than-Honorable discharges as a result of military, active duty injury or PTSD-related misconduct are saddled with both the symptoms of their PTSD, or related conditions and the stigma of their discharge. As a result, nearly all of these veterans are unable to obtain the disability, educational, and other kinds of benefits to which their service

18

otherwise entitles them.

51. The Air Force Discharge Review Board, was established in the aftermath of World War II and is charged with correcting improper or inequitable discharges.

52. In establishing the Discharge Review Boards, Congress expressed an intent to avoid over-harsh consequences for service members discharged as the result of mental health conditions. See, e.g., An Act to Provide Federal Government Aid for the Readjustment in Civilian Life of Returning World War II Veterans: Hearing on H.R. 3917 and S. 1776 Before the House Comm. on World War Veterans' Legislation, 78th Cong 182 (1944) at 192; 78 Cong. Rec. 4453 (1944).

53. But contrary to the equitable purpose for which the NDRB was established, in recent years the Navy has issued near-blanket denials to Sailors and Marines seeking discharge upgrades in connection with PTSD, TBI, and other mental health conditions.

54. According to records released by the United States Department of Defense (DoD) in settlement of a Freedom of Information Act lawsuit, since January 2016, the NDRB has granted discharge upgrades in just 15 percent of cases in which PTSD was alleged to have been a contributing factor.  (*Now this problem appears as uniform throughout the military*).

55. As related to the entire military the following subsequently below(¶¶ 82-89) appears as widespread:

By contrast, in the same period and subject to the same legal regime, the Army Discharge Review Board (ADRB) has granted discharge upgrades in 45 percent of such cases, and the Air Force Discharge Review Board (AFDRB) has granted discharge upgrades in 37 percent of such cases.

56. Since issuance of these binding instructions in 2014, the NDRB has recognized that the Hagel Memo applies to its adjudications. See also 10 U.S.C. § 1553(d)(3)(A)(ii) (as amended by

Pub. L. 114-328, Div. A, Title V, § 535, Dec. 23, 2016, 130 Stat. 2123-24) (codifying Hagel Memo "liberal consideration" standard in DRB statute).

57. However, in a sample of 299 NDRB decisions issued since 2015, randomly selected from all decisions issued by the NDRB in that period and published in the NDRB's online reading room, the NDRB cited the Hagel Memo in only 66 percent of cases involving allegations or indications of PTSD or TBI and in only 44 percent of cases involving allegations or indications of PTSD, TBI, or other related mental health conditions.

58. In the cases sampled, where the NDRB fails to cite the Hagel Memo despite allegations or indications of PTSD or PTSD-related conditions, the NDRB also does not cite past decisions to explain why it is citing the Hagel Memo in some but not other PTSD-related cases.

59. On information and belief, the United States Department of Defense (DoD), U.S. Department of Veterans Affairs, ARBA or NDRB frequently denies veterans' discharge upgrade applications on the basis of the presumption of governmental regularity without explaining why this presumption applies and why the contrary evidence provided is insufficient to rebut it, particularly in view of the federal statute that codifies the "liberal consideration" standard set forth in the Hagel Memo.

60. The Defendants routinely loses documents of which it is legally required to maintain possession. Even when Defendants loses records that   it has a duty to maintain, the United States Department of Defense (DoD), U.S. Department of Veterans Affairs, Navy or NDRB routinely draws an inference in favor of the government, in derogation of spoliation of evidence principles.

61. In order to assist veterans in preparing their own discharge upgrade applications, the NDRB is required to promptly publish all discharge upgrade decisions to a publicly-available online reading room.

62. Despite its legal obligation to promptly make public all decisional documents relating to discharge upgrade applications, the ARBA or NDRB routinely delays such publication or altogether fails to publish past decisions.

63. Without the benefit of clear and available prior decisions, the U.S. Department of Veterans Affairs, ARBA or NDRB deprives applicants of the opportunity to cite to cases that may be similar to their own case. Furthermore, even veterans with meritorious cases are often unaware of how to satisfy the U.S. Department of Veterans Affairs, ARBA or NDRB's unclear decisional standards due to the dearth of clear and available precedent.

### FIRST CAUSE OF ACTION:
### Defendants' Failure to Award Basic Entitlements
### (Violation of 38 U.S.C. § 1110)

64. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this complaint.

65. Plaintiff alleges that the Secretary of the Veterans Affairs at the direction of the Secretary's Air Force branch of the military, acting on behalf of the United States denial of their 100% disability resulting from PTSD, PTSD related conditions, pain or personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in the line of duty, in active military service, during a period of trauma or war, deprived Plaintiff of Plaintiff's guaranteed payment or compensation as a veteran who was disabled and discharged or released under conditions other than dishonorable from the period of service in which their injury or disease was incurred, or preexisting injury or disease was aggravated, in violation of 38 U.S.C. § 1110.

2. 10 U.S.C. § 1552(a)(5) does not grant discretion over which BCMR decisions are made publicly available.

## SECOND CAUSE OF ACTION:
### Defendants' Failure or Disregard of Presumption of Sound Condition
### (Violations of 38 U.S.C. § 1110, and 38 U.S.C. § 1111)

66. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this complaint.

67. Plaintiff allege that the Secretary of the Veterans Affairs at the direction of the Secretary's of each branch of the military, acting on behalf of the United States blanket denial of their claims or guarantee in violation of § 1110, because Plaintiff was taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of Willis' examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that Hills' injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. Code § 1111.

## THIRD CAUSE OF ACTION:
### Defendants' Failure to Award Disabilities Aggravated By,
### Service-Connected Disease or Injury
### (Violations of 38 C.F.R. § 3.300, and 38 C.F.R. § 3310)

68. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this complaint.

69. Plaintiff alleges that the Secretary of the Veterans Affairs at the direction of the Secretary's of each branch of the military, acting on behalf of the United states erroneously denied Hill individual claim in violation of § 3.300(c), for disability which is proximately due to or the result of a service-connection injury or disease established for a secondary condition, and Hill secondary condition should have been considered a part of the original condition in violation of 38 CFR § 3.310 et seq.,

70. Plaintiff further alleges that the Secretary of the Veterans Affairs, including the approval of the Secretary's of each branch of the military erroneously denied Hill individual claim for

22

psychiatric disability or aggravation of an EPTS condition of non-service-connected disabilities

based on identifying evidence it saw in veteran's case in violation of 38 U.S.C § 5103(a).

71. With knowledge of the increase in severity of Hill individual non-service-connected

disease or injury, not due to the natural progress of the non-service-connected injury or disease,

as service connected in violation   of 38 CFR § 3.310 et seq.,

## FOURTH CAUSE OF ACTION:
### (Violation of Administrative Procedure Act 5 U.S.C. § 706(2)(A)-
### Arbitrary and Capricious Agency Action

72. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the

proceeding paragraphs of this complaint.

73. Defendants' erroneous denials of individual Plaintiff discharge upgrades by the Secretary of

the Veterans Affairs, including the approval of the Secretary's of each branch of the military,

acting on behalf of the United States Department of Defense (DoD), or failure to correct errors in

or remove injustices from Hills' military records or discharge upgrade applications are final

agency actions.

74. Of the PTSD-related applications before the Air Force Discharge Review Board which

operates under the same statute, regulations, and guidance as the other Boards including the

Hagel Memo grants approximately 37 percent of applications involving allegations of PTSD

appears to still serve as inadequate and deficient to constructively assist Hill pursuant to 5

U.S.C. § 706(2)(A).

75. The enormous discrepancy in grant rates between the U.S. Department of Veterans Affairs,

NDRB, ABCMR, AFDRB, AFBCM and the ADRB results in part from the NDRB's systematic

failure to give "special consideration" to veterans' VA diagnoses of PTSD or "liberal

consideration" to diagnoses by private practitioners, as directed by the Hagel Memo.

76. In failing to meaningfully apply the Hagel Memo to the class members' discharge upgrade applications, Defendant has acted arbitrarily and capriciously, in abuse of his discretion, and contrary to law in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

77. The U.S. Department of Veterans Affairs, and AFDRB only cites the Hagel Memo in approximately two-thirds of cases involving PTSD or TBI, but does not explain why it fails to cite the Memo in the other cases.

78. By failing to give reasons for applying relevant legal standards in some cases, but not others, the U.S. Department of Veterans Affairs, and AFDRB issues decisions that are arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

79. Defendants, acting through the U.S. Department of Veterans Affairs, and AFDRB has further abused his discretion by failing to explain the evidentiary standards under which discharge upgrade applications are adjudicated.

80. This has made it impossible for veterans to know what evidence the U.S. Department of Veterans Affairs, and the AFDRB would credit, and therefore impossible for these veterans to prepare their applications effectively.

81. Defendant's failure, moreover, has made it impossible for veterans to detect the U.S. Department of Veterans Affairs, AFDRB's abuses of discretion when weighing evidence in violation of 32 C.F.R. § 70.8.

82. Defendants' failure to publish evidentiary standards for discharge upgrade applications constitutes arbitrary agency action, in violation of the administrative Procedure Act, 5 U.S.C. § 706(2)(A).

83. Given the systematic problems with the Air Force's treatment and discharge of veterans

with personal injury, PTSD, TBI, and MST-related injury or misconduct, the United States

Department of Defense (DoD), U.S. Department of Veterans Affairs, and AFDRB's application

of the presumption of regularity in government affairs is arbitrary and capricious, in violation of

the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

84. This is particularly true when the U.S. Department of Veterans Affairs, and AFDRB applies

the presumption to all cases of missing records and fails to explain why the presumption is not

rebutted in the face of contrary evidence, as is required by the United States Department of

Defense's own regulations. DODI 1332.28 § E3.5.3.2.2.2.

3. Because this Court has noted that even if it does not find a waiver of sovereign immunity, Veteran's constitutional challenge
could proceed against all individual defendants under Ex Parte Young.

**FIIFTH CAUSE OF ACTION:**
**Defendants' Failure to Meaningfully Apply Hagel or Kurta Memo**
**(Violation of 5 U.S.C. § 706(2)(B) Administrative Procedure Act)**
**Agency Action Contrary to Constitutional Right**

85. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this complaint.

86. The due process protections of the Fifth Amendment require that federal administrative agencies follow their own regulations and sub-regulatory guidance in conducting their adjudications and that they conduct adjudications in a fair and orderly manner.

87. By not meaningfully applying the Hagel Memo to plaintiffs' applications, the Secretary of the Veterans Affairs at the direction of the Secretary's of each branch of the military, acting on behalf of the United States has failed to follow its own rules, in violation of its constitutional obligations and the Administrative Procedure Act, 5 U.S.C. § 706(2)(B).

88. The U.S. Department of Veterans Affairs, and AFDRB only cites the Hagel Memo in approximately two-thirds of cases involving personal injury, PTSD or TBI, but does not explain why it fails to cite the Memo in the other cases.

89. This means the burden of production of evidence to require the Hagel Memo's application in a particular case is unknown to veterans before they apply. Veterans therefore lack the notice required by due process standards, in violation of the Administrative Procedure Act, 5 U.S.C. § 706 (2) (B).

90. Given the systemic problems with the Air Force's treatment and discharge of veterans with personal injury, MTS, PTSD and TBI, the U.S. Department of Veterans Affairs, ARBA or NDRB's application of the presumption of regularity in government affairs is likely to result in a high risk of erroneous decisions, in violation of due process or equal protection guarantees.

91. This is particularly true when the U.S. Department of Veterans Affairs, and AFDRB applies

the presumption in all cases of missing records and fails to explain why the presumption is not rebutted in the face of contrary evidence.

92. The failure of the United States Department of Defense (DoD), United States Department of Veterans Affairs, AFDRB, or AFBCMR to explain how the presumption of regularity operates, when it is rebutted, and why it is justified results in veterans lacking adequate notice of the standards that will be used to adjudicate their applications. This violates constitutional rights to equal protection or procedural due process, which is a violation of the Administrative Procedure Act's guarantee of constitutional agency actions.

93. By not publishing evidentiary standards, Defendants has further violated its constitutional obligations in violation of the Administrative Procedure Act. Defendant's secrecy on this point has made it impossible for veterans to prepare effective applications or to understand how the U.S. Department of Veterans Affairs, and AFDRB arrived at a given outcome, contrary to principles of fair adjudication in violation of 10 U.S.C. § 1552, DoD Directive 1332.41, and the APA, 5 U.S.C. § 706.

94. The Secretary of the Veterans Affairs at the direction of the Secretary's of each branch of the military' failure to publish evidentiary standards has also rendered the decision-making process a black box where abuses of discretion in weighing evidence are undetectable in violation of 5 U.S.C. § 706.

95. Finally, the Secretary of the Veterans Affairs at the direction of the Secretary of the military's high rate of denying PTSD, or PTSD-related discharge upgrade applications about 85 percent indicates that the U.S. Department of Veterans Affairs, AFDRB, ARBA or NDRB has a systemic institutional bias or secret policy that discriminates against applicants who suffer from active duty injury or PTSD.

96. This secret policy is unfair and contrary to the Plaintiffs' constitutional right to equal

protection or due process because it contradicts public guidance, such as the Hagel Memo, and

because it underlies a sham decision-making process whereby denial is virtually preordained for

applicants before the U.S. Department of Veterans Affairs, and AFDRB due to prejudice.

97. Plaintiff improperly denied service-connected compensation or discharge upgrades are

subjected to undue stigma as a result of both their personal injury or discharge characterizations

and their narrative reasons for separation.

98. Willis was also denied access to VA benefits and other services that they have rightfully

earned through their service. Willis was being deprived of both a liberty and property interest in

these unlawful adjudications.

99. The U.S. Department of Veterans Affairs, and AFDRB's secret policy that discriminates

against Plaintiff of who suffered from active duty injury or PTSD is contrary to Plaintiff's

constitutional rights and in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## SIXTH CAUSE OF ACTION:
**(Violation of 10 U.S.C. § 1553, and 5 U.S.C. § 706 Administrative Procedure Act)**
**Agency Action in Excess of Statutory Authority or Short of Statutory Right**

100. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the

proceeding paragraphs of this complaint.

101. Plaintiff alleges in establishing the AFDRB, Congress recognized that a General Under

Honorable Conditions discharge issued to maintain military discipline should not be a life

sentence as it appears Defendants has imposed on the individual Plaintiff's when the Plaintiff has

not acted out of moral turpitude, especially when the Plaintiff's underlying misconduct may be

attributable to the stressors of MST, PTSD, military service or combat and mental health

conditions, that Defendants denied their individual claims in violation of 10 U.S.C. § 1553.

102. Congressional intent in establishing review boards such as the AFDRB was to protect veterans with Other-than-Honorable discharges from being unjustly burdened with such life sentences.

103. The AFDRB is governed by the same Department of Defense statute, regulations, and guidance defining the standards for discharge upgrades.

104. Yet, the AFDRB grants discharge upgrades at nearly four times the rate that the NDRB does.

105. In its virtually categorical denial of service-connected compensation for pain, MST, PTSD related condition or discharge upgrade applications, the Defendants has failed to carry out Congress' intent in establishing the Discharge Review Boards and setting forth their governing standards, thereby exceeding its authority, and has fallen short of vindicating the statutory right Congress created for veterans, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C).

---

4. DAV Mary Ellen Hill, like all others similarly situated who served were denied compensatory relief for an injury suffered or waiver for early separation due to a service-connected disability, for disease, injury, pain alone or aggravation of preexisting injury. See: Title 38 United States Code.

## SEVENTH CAUSE OF ACTION:
### Defendants' Unlawful Application of the Presumption of Regularity
### (Violation of 5 U.S.C. § 706(2) Administrative Procedure Act)

106. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the proceeding paragraphs of this complaint.

107. The Secretary of Veterans Affairs, that included approval of the Secretary of the military acting on behalf of the United States, through the AFDRB regarding Hills' service-connected claims, and request for discharge upgrade or remove injustices from their military records is a final agency action.

108. The Secretary of Veterans Affairs, and AFDRB that included approval of the Secretary acting on behalf of the United States, failed to give "liberal consideration" to Willis active duty injury or PTSD diagnosis by a private practitioner as directed by the Hagel Memo.

Defendant thus failed to meaningfully apply the Hagel Memo to Plaintiff's applications, that under the Hagel Memo, they deserved service-connected compensation, correction of errors in or remove injustices from Plaintiff's military records or a discharge upgrade as a matter of equity because the underlying cause of their injury or misconduct was service-connected or combat-related, PTSD, or a PTSD-related condition, because their injury or misconduct was not premeditated or severe.

---

5. A plaintiff may bring a claim under § 706(1) by asserting that an agency "failed to take discrete agency action that it is required to take." Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in original).

109. The Secretary of Veterans Affairs that included approval of the Secretary of the military, acting on behalf of the United States, appears to have failed or refused to follow its own rules by not responding to all the facts and issues raised in Plaintiff's claims or applications.

110. The Secretary of Veterans Affairs that included approval of the Secretary of the military, acting on behalf of the United States, appears to have applied the presumption of regularity in government affairs to individual Plaintiff's case without explaining why it was justified given the missing records. Moreover, Defendants failed to provide records with adequate notice of how to rebut such a presumption.

---

6. Under the Carson Memo, the boards are supposed to waive time limits to consider applications or reconsider prior decisions (as compared to the Hagel Memo, which only directs boards to liberally waive time limits.) Include TBI as a condition related to PTSD, Review de novo (from the beginning) any decision on a PTSD or TBI-based claim from before the Hagel memo, or any case in which the boards did not apply the Hagel standards.

111. The Secretary of Veterans Affairs, and AFDRB that included approval of the Secretary of

the military acting on behalf of the United States Department of Defense (DoD), also failed or

refused to explain why the presumption was not rebutted and why principles of spoliation of

evidence did not apply in Plaintiff's case.

112. The Secretary of Veterans Affairs that included approval of the Secretary of the military,

acting on behalf of the United States Department of Defense (DoD), failure to meaningfully

apply the Hagel Memo to Plaintiff's applications, and its failure to consider and respond to all the

facts and issues raised therein, were arbitrary and capricious, an abuse of Defendants' discretion,

contrary to the due process protections of the First and Fifth Amendment, and in excess of

Defendants' statutory authority, in violation of the Administrative Procedure Act, 5 U.S.C. §

706(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court:

Because of the actions of Defendants issue compensatory, declaratory and

injunctive relief for an injury suffered to redress current or past injury, violation of federal

statutes and regulations that require them to publish or make available to the public each of the

decisions made by Defendants' Discharge Review Boards (DRBs), Air Force Board of

Corrections of Military Records (AFBCMR) (collectively, "the Boards") and due to the wrongful

denial of service-connected compensatory relief for an injury suffered and to restrain future

injury of Plaintiff by Defendants;

(2) Direct, by issuance of an injunction, measures sufficient to ensure that Defendants establishes

constitutionally and statutorily compliant adjudication procedures, including, but not limited to,

publication of secret policies, improved training of agency personnel, and clarified evidentiary standards;

(3)  Direct, by issuance of an injunction, measures sufficient to ensure that Defendants meaningfully and consistently applies its own procedural standards in considering the effects of the individual plaintiffs' active duty injury when determining whether to grant service-connected compensatory relief for an injury suffered, correct errors in or remove injustices from their military records or upgrade their discharge statuses;

(4)  Granting Plaintiff's **$37,500,000** compensatory relief, fees, costs and litigation expenses; and

(5)  Grant any other and further relief that the Court deems just and equitable.

(6)  Plaintiff does hereby give notice for leave to file an amended complaint pursuant to local applicable rules of the Court and supplementary pleadings and, request competent legal counsel be timely appointed to assist in the preparation of any further responsive pleadings, affidavits, briefs, discovery, etc., on the ground that Plaintiff lacks the financial capability to investigate the critical issues that are so complex or their individual medical conditions (PTSD), Post Traumatic Stress disorders or PTSD related-conditions that, as a *pro se* litigate, Hill cannot reasonably be required to present this case with any effectiveness; that legal assistance is necessary and in the interest justice for the fair presentation of a proper case to the Court.

Respectfully submitted,

Mary Ellen Hill, Plaintiff
P.O. Box 6008
Suffolk, VA 23433

## CERTIFICATION OF SERVICE

I hereby certify that a true copy of the foregoing copy was mailed postage prepaid U.S. mail on this September __16__, 2020 to Garry D. Hartlied, Assistant United States Attorney, Office of the United States Attorney, Eastern District of Virginia, 8000 World Trade Center, 101 West Main Street, Norfolk, Virginia 23510-1624, and personal or electronic delivery to the below listed Plaintiffs.

By_____

Mary Ellen Hill, Plaintiff
P.O. Box 6008
Suffolk, VA 23433

Mr. Roy L. Perry-Bey
89 Lincoln Street #1772
Hampton, Virginia 23669

Mr. Phillip Webster
542 Briar Hill Road
Norfolk, VA 23502

Mr. George Bowe
1028 King Arthur Drive
Chesapeake, VA 23323

Mr. Anthony Harold
613 Goff Street
Norfolk, VA 23510

Mr. Robert Simpson
1574 North King Street
Hampton, VA 23669

Mr. Clarence Lawson
2050 Kennedy Street
Chesapeake, VA 23322

Rory Tyrone Jenkins
100013 Deputy Court,
Glenn, VA 23509

Walter Watson
904 Broad Meadows Apt. 103
Virginia Beach, VA 23462

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

**Fernando Galindo,
Clerk of Court
Walter E. Hoffman
United States Courthouse
600 Granby Street
Norfolk, VA 23510**

**Re: Roy L. Perry-Bey, et al., v. United States Department of Defense, et al., Civil Action
No. 219-cv-344-RAJ-DEM**

Dear Mr. Galindo:

Enclosed please find Plaintiff's, Mary Ellen Hills' Third Amended Complaint" to be filed in the
above referenced matter, which I ask that you to please present to the Honorable Judge Raymond
A. Jackson.

Thank you for your kind assistance in this matter,


Very truly yours,

Mary Ellen Hill, Plaintiff
P.O. Box 6008                    757-685-1730
Suffolk, Virginia 23433

36

Ernest W. Gibbs
904 Broad Meadows, Apt. 308
Virginia Beach, VA 23462

John G. Taylor
904 Broad Meadows Apt. 207
Virginia Beach, VA 23462

Lawrence Taylor
904 Broad Meadows Apt. 205
Virginia Beach, VA 23462

Dr. Vivian A. Anderson
1812 Gannet Court
Chesapeake, VA 23320

Krystal D. Jones
308 Bromsgrove Drive,
Hampton, VA 23666

Mr. Christopher L. Thompson
2 Upton Circle,
Chesapeake, VA 23320

Mr. Daniel Deloach
967 Ingleside Road
Norfolk, VA 23502

Mr. Anthony Elliott
5540 Barnhollow Road
Norfolk, VA 23502

Mr. Neal C. Morrison, Jr.
3504 Executive Center Drive
Apt. 302
Chesapeake, VA 23321

William T. Hayes
3634 Shenandoah Avenue
Roanoke, VA 22401